## Case No. 8,308.

### The LEWELLEN.

[4 Biss. 167.] [1]

District Court, D. Indiana. May, 1868.

NAME ON STEAMER—PENALTY—PRACTICE—DELIVERY BOND.

1. For a violation of the act of congress of May 5, 1864 [13 Stat. 63] requiring steamers to have their names painted conspicuously on their wheel and pilot-houses, the proper remedy is a proceeding in rem.

2. This act should not be interpreted as giving the same form of remedy as that of December 31, 1792, but only as giving the same amount of penalty.

3. The execution of a delivery bond under the act of March 3, 1847 [9 Stat. 181], is a waiver of the objection that a seizure of the vessel should precede the filing of the libel, and that no seizure had been made.

In admiralty.

Alfred Kilgore, U. S. Dist. Atty., and C. E. Marsh, for the United States.

Hanna & Knefler, for respondent.

McDONALD, District Judge. This is a libel in rem on behalf of the United States, under the act of May 5, 1864 (13 Stat. 63), to recover a penalty arising from a failure by the master, owner, and agents of the steamboat Lewellen to paint her name on her wheel-house. The libel was filed September 27, 1867. A warrant of arrest was issued on it, by virtue of which the marshal seized the vessel, which was afterwards redelivered to the owner on his execution of a bond under the provisions of the act of March 3, 1847 (9 Stat. 181).

The owner appears to the suit, makes claim, and demurs to the libel on the ground that this court, as a court of admiralty, has no jurisdiction of the cause. Whether the demurrer should be sustained must depend on the act of congress relating to the offense charged. The act on which the libel is founded, provides: "That every steamboat of the United States shall, in addition to having her name painted on her stern, as now required by law, also have the same

———

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

conspicuously placed in distinct, plain letters of not less than six inches in length on each outerside of the pilot-house, if it has one, and (in case said boat has side-wheels) also on the outerside of each wheel-house. And if any such steamboat shall be found without having her name placed as herein required, she shall be subject to the same penalty and forfeiture as is now provided by law in the case of a vessel of the United States found without having her name and the name of the port to which she belongs painted on her stern, as required by law." 13 Stat. 63, 64.

This statute obviously refers us for the penalty which it creates to a prior act of congress—the act of December 31, 1792, "concerning the registering and recording of ships or vessels." 1 Stat. 287. The 3rd section of the latter act requires that the names of all registered vessels and of the port to which they belong shall be painted on their sterns; and it provides that "If any ship or vessel of the United States shall be found without having her name and the name of the port to which she belongs painted in the manner aforesaid, the owner or owners shall forfeit fifty dollars, one-half to the person giving the information thereof, and the other half to the use of the United States." If we consider this provision of the act last named by itself, it would seem that a proceeding in rem would not lie on it. For it declares no lien or forfeiture against the vessel, but only provides that "the owner or owners shall forfeit fifty dollars." And yet when we compare the above cited provision of the act with the language of the 29th section of the same statute (1 Stat. 298, 299), and with the language of the revenue act (Id. 176), to which the 29th section refers, it is not so clear that a proceeding in rem will not lie on the 3rd section of the act of December 31, 1792.

The act of May 5, 1864, first above cited, gives "the same penalty and forfeiture" as is provided by the 3rd section of the act of December 31, 1792. Yet, in one respect, the language of the two acts differs widely. The former expressly says that "the owner or owners shall forfeit fifty dollars"; and it denounces no forfeiture against the vessel. On the contrary, the latter act (on which this suit is based) provides for no penalty against the owner or owners; but it provides that "if any such steamboat" shall violate its requirements, "she shall be subject to the same penalty and forfeiture" declared in the 3rd section of the act of December 31, 1792. In construing these two statutes together, as we must, this remarkable difference, I think, requires that we should not interpret the act of 1864 as giving the same form of remedy as that of 1792, but only as giving the same amount of penalty. And I suppose that the reference in the act of 1864 to the act of 1792, was merely in-

tended to fix the sum that should be forfeited, and not the person or thing that should incur the forfeiture, nor the mode of enforcing it.

We have seen that the act under which this prosecution was instituted, subjects no person directly to the penalty which it denounces. On the contrary, it primarily creates a penalty against the vessel itself. "She shall be subject," &c. Under this language, it may well be doubted whether either a personal action at common law, or a proceeding in personam in admiralty, would lie against the owner of this steamer. But be this as it may, it seems to me clear that the act of 1864 meant to authorize a proceeding against the vessel itself. The act in question being a navigation law, congress had the undoubted power to pass it. The vessel found voyaging on water navigable from the sea by vessels of more than ten tons burden, was, as to locality, within the admiralty jurisdiction. The offense charged being unquestionably an offense against the laws of commerce, is a proper subject for admiralty adjudication. The 9th section of the judiciary act having vested in the district courts exclusive cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, and trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burden, the present action would seem appropriate to the powers and functions of this court as a court of admiralty. And, in view of all this, I am not only satisfied that the present suit is a proper one of admiralty jurisdiction, but that no common law court of the country could entertain jurisdiction of it.

In support of the demurrer, it has been urged that the court has no jurisdiction of this cause, for the reason that no seizure of the vessel preceded the filing of the libel. In many cases under the revenue and navigation laws of the United States, it seems that a seizure prior to the commencement of the action is necessary to the jurisdiction of the court. But whether the present is such a case, it is not important to inquire; for the claimant has waived this objection by executing a delivery bond under the act of March 3, 1847. At the present term of the court, in another case,—The Lewellen [Case No. 8,307],—we discussed this question at large. We shall, therefore, not enter into the discussion here.

It must not be understood that, in this decision, we recognize a demurrer as being the proper mode of raising objections to a libel in admiralty. The demurrer is overruled at the cost of the claimant.

[NOTE. Another libel was filed on behalf of the United States for the penalty under Act July 4. 1864 (13 Stat. 390), for failure to post synopsis of laws. A demurrer to this libel was overruled at the same term of the court as above. Case No. 8,307.]